Linda **BRICKERS**, Plaintiff–Appellant,

v.

**CLEVELAND BOARD OF EDUCATION,**
Defendant–Appellee.

No. 97–3364.

United States Court of Appeals,
Sixth Circuit.

Argued June 19, 1998.

Decided July 16, 1998.

---

Denise J. Knecht (argued and briefed), Daniel J. Nealon (briefed), Denise J. Knecht & Associates, Cleveland, Ohio, for Plaintiff–Appellant.

Martin S. List (argued and briefed), Duvin, Cahn & Hutton, Cleveland, Ohio, George S. Crisci, Cleveland Board of Education Law Department, Cleveland, Ohio, for Defendant–Appellee.

Before: MARTIN, Chief Judge; KENNEDY and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Plaintiff/appellant Linda Brickers appeals an adverse grant of judgment as a matter of law in this action arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12101–12213. The district court held that Brickers failed to demonstrate that she could perform an essential function of the position for which she felt she was qualified, and therefore could not make out a *prima facie* case of discrimination. As set forth below, we **AFFIRM**.

## I.

From 1989 until 1992, Brickers was a bus driver for the Cleveland Board of Education ("Board"). Beginning in 1990, Brickers began to experience pain and discomfort in her lower back and radiating down her right leg. Her condition did not improve with treatment.

The pain caused Brickers first to request temporary leave from work, and then to seek a transfer from her position as bus driver to that of bus attendant. The Board only employs bus attendants on "special education" buses transporting handicapped students.[1] A bus attendant has a number of duties and responsibilities predominantly centering around supervision over and physical assistance of the handicapped students.

Brickers sought the transfer as an accommodation to which she believed she was entitled under her union's collective bargaining agreement. She alleged that in spite of her disability, she had been able satisfactorily to perform the duties of bus attendant on those occasions when her supervisor permitted her to trade responsibilities with the attendant on the bus to which she was assigned as driver. She submitted to the Board letters from her treating physician describing her condition and suggesting the transfer, as well as a letter of her own requesting the transfer.

Subsequently, the Board informed Brickers that before it could effect the transfer, Brickers was required to undergo the "B–200/BSafe low back assessment system" test

("B–200 test"), a test designed to determine lower back strength and flexibility. She first took the test on August 21, 1992, and then again on June 15, 1993. There is some dispute over whether she passed the test on the first administration, although it is clear that she passed on the second administration. Nonetheless, Brickers has maintained throughout that she both was and is unable to lift. Indeed, Brickers testified that on at least one occasion she nearly fell down the stairs in her house when her back pain proved so severe that she dropped a laundry basket full of clothes.

On September 29, 1992, the Board held a hearing to determine whether to terminate Brickers from her position as bus driver. The Board recommended termination and notified Brickers of its decision on November 13, 1992. Brickers later filed a grievance through her union and won. However, the Board never reinstated her.

After exhausting her administrative remedies through the EEOC, Brickers filed suit against the Board in 1996, alleging violations of the ADA, 42 U.S.C. §§ 12101–12213, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796i, Ohio Rev.Code § 4112.99, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17.[2] She requested relief in the form of declaratory judgment, reinstatement, backpay, compensatory damages of $150,000, and costs and fees.

During trial in 1997, the district court granted judgment as a matter of law, holding that lifting was an essential function of a bus attendant's job, and that an employer need not exempt an employee from performing an essential function in order to accommodate that employee's disabilities. Because the sole accommodation Brickers requested was one for which she was not qualified, the court

---

1. A handicapped student is one "who is developmentally handicapped, hearing handicapped, speech handicapped, visually disabled, severe behavior handicapped, orthopedically handicapped, multi-handicapped, other health handicapped, specific learning disabled, autistic, or traumatic brain injured, and by reason thereof requires special education." Ohio Rev.Code § 3323.01(A).

2. Brickers raised the Title VII claim alleging discrimination on the basis of her gender. However, the district court apparently disposed of this claim on summary judgment, and Brickers does not challenge that judgment here.

found that she had no right of action against the Board.

## II.

In reviewing a motion for a judgment as a matter of law under FED. R. CIV. P. 50, this court applies the same standard that the district court uses. *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1328 (6th Cir.1992). The court will therefore "consider[ ] the evidence in a light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences." *Tuck v. HCA Health Servs. of Tennessee, Inc.*, 7 F.3d 465, 469 (6th Cir.1993). Accordingly, judgment as a matter of law will be proper where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue, [or where] a claim or defense ... cannot under the controlling law be maintained or defeated without a favorable finding on that issue." FED. R. CIV. P. 50(a).

## III.

Brickers argues that the district court erroneously found that lifting was an essential function of the position of school bus attendant.

In order to make out a *prima facie* case of employment discrimination on the basis of a disability, a claimant must establish that: "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996). *See also* 42 U.S.C. § 12112(a) (setting forth the general prohibition against discrimination on the basis of disability). An "otherwise qualified" individual is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Here, both parties agree that the claimant is disabled, and that she was terminated solely because of that disability. The only issue to resolve is whether she

is "otherwise qualified," *i.e.*, whether she can perform the essential functions of the job.

Both the Act itself and its enforcing regulations provide certain guidelines for determining if a given function is "essential." Section 12111(8) specifically states that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." Further, 29 C.F.R. § 1630.2(n)(3) enumerates seven non-exclusive factors to weigh in determining if a function is "essential," to wit:

(1) an employer's judgment that the function is essential;

(2) written job descriptions;

(3) the amount of time on the job devoted to performing the function;

(4) the consequences of not requiring the employee to perform the function;

(5) terms in a relevant labor agreement;

(6) the work experience of those who have held the position in the past; and

(7) the current work experience of those who hold similar jobs.

Although the determination of whether a given function is "essential" within the meaning of the ADA and regulations promulgated thereunder is typically a question of fact for the jury and thus not suitable for resolution through a motion for judgment as a matter of law, *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir.1988), the determination of "essentialness" in this case is properly a question of law. OHIO ADMIN. CODE § 3301–83–06(D) sets out the qualifications for "aides for handicapped pupils." Primary among those qualifications is a requirement that the attendant have the "[p]hysical capability of appropriately lifting and managing handicapped pupils when necessary." OHIO · ADMIN. CODE § 3301–83–06(D)(1). Therefore, in order to comply with state law, the Board must hire as school bus attendants only those applicants able to lift.

The rationale underlying this regulation is manifest. Although, as Brickers has argued, it may be true that an attendant seldom, if

ever, must perform any lifting, the ability to lift would be crucial in an emergency situation, such as an accident or fire. Much like a police officer must have the skill required to use a firearm yet might never actually draw his or her weapon, it only stands to reason that a bus attendant charged with the supervision and care of a group of children with peculiar needs and limitations would be able to account for those needs and limitations in any foreseeable circumstance, regardless of whether that circumstance actually arises. A lifting requirement is one sensible means toward ensuring that a bus attendant will adequately protect his or her charges in the event of an emergency, however unlikely.

█ To allow a finder of fact to ignore the lifting requirement set forth in Ohio law would force a Hobson's choice on the Board, leaving the Board either to subject itself to potential ADA liability for refusing to hire those who cannot lift, or to subject itself to potential penalties from the state for failing to adhere to state law, to say nothing of the possible tort liability the Board might face should a child suffer an injury as a result of an attendant's inability to lift. *Cf. Murphy v. United Parcel Serv., Inc.*, 946 F.Supp. 872, 882–83 (D.Kan.1996), *aff'd*, 141 F.3d 1185 (10th Cir. 1998), *petition for cert. filed*, 66 USLW 3800, 67 USLW 3027 (U.S. June 9, 1998) (No. 97–1992) (finding that no rational trier of fact could find that a legally-defined prerequisite to employment was not essential, and that "[t]he ADA does not require an employer to accommodate a person's disability by ignoring other duties imposed by law"). Therefore, a legally-defined job qualification is by its very nature an essential function under § 12111(8), irrespective of whether the employer adheres to that requirement in all cases. *See Myers v. Hose*, 50 F.3d 278, 284 (4th Cir.1995) (failure to require performance of essential functions in all cases does not entitle an ADA claimant to a similar extraordinary accommodation).

Brickers readily admits that she is incapable of performing an essential function of the bus attendant position. Even on those occasions where she passed the B–200 test, Brickers still maintained that she was unable to lift.

Nonetheless, Brickers contends that the Board was required to offer her some manner of accommodation. She specifically suggests that the Board assign her to a bus route in which the risk that an occasion would arise for her to lift a child is minimized, *e.g.*, a bus route servicing only children with minimal or no physical handicaps.

█ This argument is ultimately unavailing. If a claimant cannot show that she can perform the essential functions of a given position with or without an accommodation, she is not a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8), and accordingly fails to make out a *prima facie* case of discrimination. The ADA does not demand that an employer exempt a disabled employee from an essential function of the job as an accommodation. *Hall*, 857 F.2d at 1078. What Brickers requests is not an accommodation, but rather an exemption and, as such, does not survive the threshold determination of whether she is a "qualified individual with a disability."

**AFFIRMED.**