**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS E. LUSBY,
<u>Plaintiff-Appellant,</u>

v.

METROPOLITAN WASHINGTON AIRPORTS

No. 98-2162

AUTHORITY,
<u>Defendant-Appellee.</u>

UNITED STATES OF AMERICA,
<u>Amicus Curiae.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan Jr., Senior District Judge.
(CA-97-1643-A)

Argued: May 5, 1999

Decided: August 9, 1999

Before NIEMEYER, MICHAEL, and TRAXLER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Gerard Kane, CASHDAN & GOLDEN, Washington, D.C., for Appellant. Morris Kletzkin, FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ, Washington, D.C., for Appellee. **ON BRIEF:** Vicki G. Golden, CASHDAN & GOLDEN,

Washington, D.C., for Appellant. Jerome Ostrov, Mark D. Crawford, FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ, Washington, D.C.; Edward S. Faggen, Joseph E. Kalet, METROPOL-ITAN WASHINGTON AIRPORTS AUTHORITY, Alexandria, Virginia, for Appellee. Bill Lann Lee, Acting Assistant Attorney General, Jessica Dunsay Silver, Rebecca K. Troth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Thomas E. Lusby ("Lusby") appeals from the district court's order granting summary judgment in favor of the Metropolitan Washington Airports Authority ("Airports Authority") on Lusby's claims under the Americans with Disabilities Act ("ADA" or"Act"), 42 U.S.C.A. § 12101-12213 (West 1995 & Supp. 1998). For the reasons set forth below, we affirm.

I.

Lusby worked for the Airports Authority for nearly a decade before his discharge on July 17, 1995. At all times relevant to this action, he held the position of Firefighter/Assistant Fire Marshal. The Airports Authority supplied a written job description for this position:

> The incumbent's primary duty is to respond as an airport firefighter to all emergencies. The incumbent's daily routine is to conduct comprehensive fire safety inspections for all [Airports Authority] property, under the guidance of the Fire Marshal.

2

(Emphasis added).

Because Lusby was always obligated to be on standby and available to respond to airport emergencies, the Airports Authority took reasonable precautions to minimize the possibility that he might be injured in the course of these duties. For instance, at the Airports Authority's insistence, Lusby was required to carry protective gear in his vehicle to be utilized during his response to crisis situations. Moreover, Lusby was trained extensively with respect to:

> [A]ll aspects of firefighting, safety and rescue, including live firefighting, aircraft rescue firefighting, emergency medical training, ladder training, medivac operations . . . self-contained breathing apparatus ("SCBA"), water rescue, disaster and triage procedures, operation of emergency and rescue vehicles, equipment and apparatus, and physical fitness and other training.

The Airports Authority maintained Performance Evaluation and Rating Forms assessing Lusby's effectiveness during training, and also assessing Lusby's competence in responding to actual emergencies. Incidences on which to evaluate Lusby in this regard were not lacking. Indeed, Lusby responded to 32 documented emergencies during his last three years of employment alone. In each instance, Lusby responded in a standby capacity and was expected to "respond to fires while on-duty and carry out firefighting tasks/duties if assigned to do so. . . ." Thus, Lusby's required participation in emergency responses potentially exposed him to intense physical exertion, environmental extremes, and emotional stress.

In April 1995, Lusby was diagnosed as having severe coronary artery disease.[1] His treating cardiologist, Dr. Mahesh P. Shah ("Dr. Shah"), remarked upon the threatening nature of this disease:

> Coronary artery disease is the number one disease affecting people in the industrialized nations. In the U.S., it happens to be the number one killer.

_____

[1] Lusby also suffers from high blood pressure, hypolipidemia, obesity, and diabetes.

3

. . .

> What happens is those that are lucky get warnings in terms of chest pain, known as angina, and people do come down with [sic] very first chest pain with a heart attack, without any prior warnings, and also it is equally common that that very first pain, heart attack, people do drop dead, and as a matter of fact, despite all the knowledge, all the advances, intervention, one person still dies every minute of a sudden death.

Dr. Shah also observed specifically of Lusby that "[b]ecause of his medical condition, Mr. Lusby is at risk of suffering an acute myocardial infarction (heart attack) and sudden death. As a result, I have advised Mr. Lusby to avoid extreme physical exertion as well as extreme environmental conditions." Even Lusby himself candidly stated to the Airports Authority that "I am medically disqualified for my current position as a Firefighter/Assistant Fire Marshal with the Authority."

Notwithstanding his medical condition, Lusby did not intend to relinquish his employment with the Airports Authority. After the Airports Authority notified him of its intention to end his employment, Lusby requested in writing that the Airports Authority "reasonably accommodate" him "by restructuring [his] current job to accommodate [his] physical limitations, modifying his work schedule, and/or . . . reassigning [him] to another position within the Authority." Because of his poor health, the Airports Authority denied Lusby's accommodation request. At that time, Fire Chief Donny Cherry, writing for the Airports Authority, stated as follows:

> In a public safety environment, the criticality of certain tasks, not how often you perform them, determines whether they are essential to a position. [Y]our ADA accommodation request asks that we eliminate many of the essential functions related to your position as Firefighter/Assistant Fire Marshal. To accommodate your request would drastically alter the duties of your position to the point[that] we would essentially be creating a new job for you. Under the

4

> ADA, employers are not required to create new jobs as a
> form of reasonable accommodation.

Thereafter, Lusby filed for disability retirement, which the Airports Authority approved.**2**

Lusby then filed this action alleging discrimination under the ADA.**3** The district court granted summary judgment in favor of the Airports Authority, however, finding that Lusby was not a"qualified individual with a disability" under the ADA. Lusby appeals.

II.

The ADA prohibits discrimination against a "qualified individual with a disability . . . in regard to application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). "Accordingly, to determine whether [Lusby] was qualified for the [Firefighter/Assistant Fire Marshal] position, we must decide (1) whether [ ]he could perform the essential

_____

**2** After learning of Lusby's heart condition, the Airports Authority did offer him a temporary dispatcher position. Lusby declined this position. Because Lusby has not raised the issue of reassignment on appeal, we address only his arguments regarding his fitness to perform the essential functions of the Firefighter/Assistant Fire Marshal position.

**3** Lusby also filed for disability with the Virginia Workers' Compensation Commission and the United States Civil Service Commission, alleging that he contracted coronary artery disease due to his work for the Airports Authority. According to the Airports Authority, Lusby is estopped -- in his ADA claim -- from asserting his ability to perform the essential functions of the Firefighter/Assistant Fire Marshal position since he denied the ability to perform them in his claim for workers' compensation. Because we find that Lusby was not a"qualified individual with a disability" under the ADA, the Airports Authority prevails for that reason, and we need not address their argument on judicial estoppel.

5

functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue, and (2) if not, whether any reasonable accommodation by the [Airports Authority] would enable [him] to perform those functions." Tyndall v. Nat'l Educ. Centers, Inc., 31 F.3d 209, 213 (4th Cir. 1994) (internal quotation marks omitted). Lusby "bears the burden of demonstrating that[ ]he could perform the essential functions of [his] job with reasonable accommodation." Id.

A.

We first address Lusby's argument that he could perform the essential functions of the Firefighter/Assistant Fire Marshal position despite his disability. According to Lusby, these functions included "conduct[ing] comprehensive fire safety inspections of [Airports Authority] facilities to ensure compliance with all applicable regulations and standards . . .[,] identify[ing] violations and recommending corrective action . . .[,] investigat[ing] causes of fires to determine origin and responsibility . . .[,] perform[ing] interviews and prepar[ing] documentation to substantiate the results of [his] investigations." Lusby contends that he was not required to engage in emergency response and, therefore, that emergency response was not an essential function of his position.

In support of his argument, Lusby directs our attention to ADA regulations providing a list of factors to be considered when determining which function(s) of a job are essential. The regulations state that "[e]vidence of whether a particular function is essential includes, but is not limited to:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs."

29 C.F.R. § 1630.2(n)(3) (1998).

Lusby maintains that a fair application of these factors to his performance as a Firefighter/Assistant Fire Marshal reveals a genuine issue of material fact as to whether emergency response was an essential function of his position. We disagree.

Clearly, in the Airports Authority's judgment, emergency response was an essential function of the Firefighter/Assistant Fire Marshal position. Indeed, the Airports Authority's job description for Firefighter/Assistant Fire Marshals provided that "[t]he incumbent's primary duty is to respond as an airport firefighter to all emergencies. . . ." Lusby, nevertheless, requests that we disregard the Airports Authority's description of a Firefighter/Assistant Fire Marshal's "primary duty" since, according to Lusby, he never actually performed emergency response duties. However, the record belies Lusby's claim in this regard.

The Airports Authority cited 32 documented cases in which Lusby responded to emergency calls during his last three years of service. And Lusby conceded at deposition that he responded to emergencies -- including fire emergencies -- while employed as a Firefighter/Assistant Fire Marshal:

> Q. Did you respond to emergencies as the assistant fire marshal?
>
> A. Yes.
>
> Q, Tell me about the emergencies that you responded to?
>
> A. I don't recall exact dates.

7

Q. Okay. Did you respond to fire emergencies, sir?

A. Yes.

Q. Did you do it more than once?

A. Yes.

Q. Did you respond to medical emergencies?

A. As I was doing my inspections?

Q. At any time while you were working for the Metropolitan Washington Airports Authority? --

A. Yes.

Despite his deposition testimony, Lusby asserts that his presence at such emergencies was merely happenstance and not the result of any affirmative duty owed to the Airports Authority. In other words, Lusby takes the position on appeal that he was not required to be present at such emergencies, although he was in fact present. But, during deposition, Lusby admitted to receiving "calls" to respond to at least several of the emergencies. Thus, Lusby has made conflicting representations. In his deposition, he refers to a number of "calls" in which the Airports Authority summoned him to respond to emergencies. On appeal, however, he reverses his ground and alleges that the Airports Authority never requested that he attend emergencies.

While we note the conflict presented by Lusby's assertions, it is insufficient to forestall summary judgment. It is well settled that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984).

Other evidence also compels the conclusion that emergency response was an essential function of the Firefighter/Assistant Fire Marshal position. Foremost is the fact that the Airports Authority rou-

8

tinely trained Firefighter/Assistant Fire Marshals (including Lusby) to perform emergency response. It is undisputed that Lusby was extensively trained to respond to all types of emergencies, including, of course, fires. We perceive no logical reason why the Airports Authority would have committed the resources to train Lusby in all aspects of emergency response, unless it expected him to perform in a real life emergency. Moreover, the fire-retardant clothing, protective helmet, and breathing tank which Lusby was required to carry on his truck at all times -- and which he donned several times in the course of his duties as a Firefighter/Assistant Fire Marshal -- support the conclusion that Lusby was expected to engage in potentially life-threatening activity. Also, the Firefighter/Assistant Fire Marshals received performance evaluations based on, inter alia, their "respon[se] to all emergencies (i.e. aircraft, structures, medical, fuel spills, tankers, etc.) and [their] participat[ion] in fire/rescue operations in full protective clothing." Thus, it is clear that no reasonable fact-finder could conclude anything other than that Lusby's position included the essential duty to engage in emergency response when necessary, which potentially exposed him to intense physical exertion, environmental extremes, and emotional stress, any of which could fatally aggravate his heart condition.

We are mindful of Lusby's claim that, even assuming he was required to respond to emergencies, he was never required to actually aid in the extinguishing of any fire, or to provide medical assistance, such as C.P.R., to any victims of emergency conditions. We reject, however, Lusby's contention that this demonstrates the non-essential nature of emergency response to the Firefighter/Assistant Fire Marshal position. The fact that Lusby rarely had to actually perform (beyond responding) in an emergency situation cannot diminish the importance of his being able to perform should the circumstances so require. Indeed, "[m]uch like a police officer must have the skill required to use a firearm yet might never actually draw his or her weapon," Brickers v. Cleveland Bd. of Educ. , 145 F.3d 846, 850 (6th Cir. 1998), a Firefighter/Assistant Fire Marshal charged primarily with responding as an airport firefighter to all emergencies must be able to perform in such capacity "in any foreseeable circumstance, regardless of whether that circumstance actually arises," id.

Although it was fortunate that no emergency rose to such a level that Lusby was forced to perform strenuous tasks in a crisis situation

9

during his tenure as a Firefighter/Assistant Fire Marshal, we agree with the district court's determination that emergency response was an essential function of Lusby's position and that he might be required to perform such tasks. The record further reveals that Lusby suffers from not one but several severe ailments which would prevent him from performing in emergency circumstances if called upon to do so. Thus, it is clear that Lusby has failed to establish that he could perform the essential functions of the Firefighter/Assistant Fire Marshal position.

B.

Although Lusby was unable to perform the essential functions of the Firefighter/Assistant Fire Marshal position, we must nevertheless determine whether he could do the job with reasonable accommodation. See Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997). Lusby contends that the Airports Authority could have reasonably accommodated him by relieving him of his obligation to perform emergency response. Because the requested accommodation would require the Airports Authority to eliminate an essential function of Lusby's position, we find his claim without merit.

The ADA requires that an employer make a reasonable accommodation to an otherwise qualified employee unless the employer can show, inter alia, that the accommodation would require elimination of an essential function. See Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995). As previously determined, emergency response is a function of paramount importance on the Airport Authority's premises. All personnel must be able to fulfill their responsibilities any time a crisis develops. This demands readiness at all times by everyone -- a requirement Lusby simply could not meet.

Because Lusby can no longer perform under stressful circumstances, in order to retain Lusby and "[t]o accommodate [him] adequately, [the Airports Authority] would need to hire an additional person to perform the essential [emergency response] function of [his] job. The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position." Martinson, 104 F.3d at 687. Nor does the ADA require an employer "to restructure the essential functions of a position to fit

10

the skills of an individual with a disability who is not otherwise qualified to perform the position," 29 C.F.R. Pt. 1630, App. § 1630.9 (1998), or to "exempt a disabled employee from an essential function of the job as an accommodation," Brickers, 145 F.3d at 850. Here, as in Brickers, "[w]hat [Lusby] requests is not an accommodation, but rather an exemption and, as such, does not survive the threshold determination of whether [he] is a `qualified individual with a disability.'" Id.

III.

In sum, we find that Lusby is not a "qualified individual with a disability" under the ADA as he cannot perform the essential function of emergency response with or without reasonable accommodation. Accordingly, we affirm the district court's order granting summary judgment in favor of the Airports Authority.

AFFIRMED