BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE DION ARONER, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
Is a city required under the federal Americans with Disabilities Act to provide, as an accommodation for a disabled member of its city council or an advisory board who is unable to attend a regularly scheduled meeting of the council or board, a teleconferencing connection at the member's place of residence where members of the public would not be permitted to be present?
 CONCLUSION
A city is not required under the federal Americans with Disabilities Act to provide, as an accommodation for a disabled member of its city council or an advisory board who is unable to attend a regularly scheduled meeting of the council or board, a teleconferencing connection at the member's place of residence where members of the public would not be permitted to be present.
 ANALYSIS
We are asked whether a city is required under the federal Americans with Disabilities Act (42 U.S.C. § 12101-12213; "ADA")[1] to provide a teleconferencing connection for a member of the city council or a city advisory board unable to attend a council or board meeting due to a disability where the teleconferencing site would not be made available for members of the public to attend. We conclude that a city is not so required by federal law.
Title I (§§ 12111-12117) of the ADA pertains to employment practices.[2] For our purposes, the principal prohibition of title I is found in section 12112:
"(a) General rule
 "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
"(b) Construction
 "As used in subsection (a) of this section, the term `discriminate' includes-
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability which is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or,
 "(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
The phrase "qualified individual with a disability" is defined as follows:
 "The term `qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." (§ 12111(8).)
The term "reasonable accommodation" has the following meaning:
"The term `reasonable accommodation' may include-
 "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
 "(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision or qualified readers or interpreters, and other similar accommodations for individuals with disabilities." (§ 12111(9).)
Possible defenses to a charge of discrimination under title I are set forth generally in section 12113(a):
 "It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter."
With these provisions of the ADA in mind, we turn to state law, the Ralph M. Brown Act (Gov. Code, §§ 54950-54962; "Brown Act"), which establishes the procedures for holding meetings by local public agencies. The essential requirements of the Brown Act were recently reviewed in International Longshoremen's Warehousemen's Union v. Los Angeles Export Terminal, Inc. (1999) 69 Cal.App.4th 287, 293-294:
 "The Brown Act (§ 54950 et seq.), adopted in 1953, is intended to ensure the public's right to attend the meetings of public agencies. [Citation.] To achieve this aim, the Act requires, inter alia, that an agenda be posted at least 72 hours before a regular meeting and forbids action on any item not on that agenda. [Citation.] The Act thus serves to facilitate public participation in all phases of local government decision-making and to curb misuse of the democratic process by secret legislation of public bodies. [Citation.]
 "The Act's statement of intent provides: `In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.' [Citation.]
 "The Brown Act dictates that `[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter.' [Citation.]"
The Brown Act authorizes two types of public meetings. The first and usual type is where there is "any congregation of a majority of the members of a legislative body at the same time and place" to hear and discuss public business. (Gov. Code, § 54952.2.) The second is where the meeting is conducted through a teleconferencing connection. With respect to the latter, Government Code section 54953, subdivision (b) provides:
 "(1) Notwithstanding any other provision of law, the legislative body of a local agency may use teleconferencing for the benefit of the public and the legislative body of a local agency in connection with any meeting or proceeding authorized by law. The teleconferenced meeting or proceeding shall comply with all requirements of this chapter and all otherwise applicable provisions of law relating to a specific type of meeting or proceeding.
 "(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(3) If the legislative body of a local agency elects to use teleconferencing, it shall post agendas at all teleconference locations . . . Each teleconference location shall be identified in the notice and agenda of the meeting or proceeding, and each teleconference location shall be accessible to the public . . . The agenda shall provide an opportunity for members of the public to address the legislative body directly pursuant to Section 54954.3 at each teleconference location.
 "(4) For the purposes of this section, `teleconference' means a meeting of a legislative body, the members of which are in different locations, connected by electronic means, through either audio or video, or both . . . ."
Accordingly, meetings conducted by teleconferencing must have (1) all members of the legislative body present at one of the teleconferencing locations, (2) an agenda posted at all such locations, and (3) members of the public permitted to be present at any of the locations.
Returning to the mandates of the ADA, we first determine whether a member of a city council or an advisory board, who is unable due to a disability to attend a scheduled meeting at a location that is open to the public, is a "qualified individual with a disability." (§ 12111(8).) Specifically, is the ability to attend a scheduled meeting at a location open to the public an "essential function" of the office? Section 12111(8) provides in this regard that "consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."
Here, the California Legislature has determined that attendance by members of a city council (Gov. Code, § 54952, subd. (a)) or an advisory board (Gov. Code, § 54952, subd. (b)), at scheduled meetings accessible to the public is an essential function of the office. Public attendance facilitates the people's right to participate in all phases of local government decision-making and serves to prevent misuse of the democratic process by secret legislative action at the local government level. (See Cohan v. City of Thousand Oaks (1994)30 Cal.App.4th 547, 555.) This state legislation constitutes preexisting written notice to the public respecting this essential feature of the political process of local public agencies.
Similarly, the ability to attend scheduled meetings that are accessible to the public is both "job-related and consistent with business necessity." (§ 12113(a).) In an action initiated under the ADA, where the existence of an impairment that substantially limits a major life activity has been established, the employer must demonstrate that the challenged criteria are job-related and required by business necessity and that reasonable accommodation is not possible. (Andrews v. State of Ohio (6th Cir. 1997) 104 F.3d 803, 808.) We have observed in a related context that a job-related employment standard is one that is necessary to the conduct of the employer's business and that a specification which is not manifestly related to the requisite qualifications for the job is "non-job related." (64 Ops.Cal.Atty.Gen. 728, 731, fn. 3 (1981).) In 62 Ops.Cal.Atty.Gen. 180, 186 (1979), we further discussed the elements of discrimination in a related context:
 "Upon such a showing of disproportionate impact, the employer must establish that the employment criterion is necessary to the conduct of its business; if it is, title VII is not violated. [Citations.] Thus, no violation occurs where the employer can demonstrate that the criterion is manifestly related to the requisite qualifications for the job. [Citations.] Rather, such qualifications have become `the controlling factor.' [Citation.] What is required is the removal of `artificial, arbitrary, and unnecessary barriers' to employment which operate invidiously to discriminate on the basis of an impermissible classification. [Citations.] Nevertheless, even assuming that an employment criterion is job related, it is unlawful if used as a pretext for discrimination [citations] or if other selection devices without a similar discriminatory effect would also serve the employer's legitimate interests [citations]."
In California, the ability of each member of a local agency board to attend meetings at a location accessible to the public is related to the requisite qualifications for that particular office. This criterion cannot be viewed as a pretext for discrimination against an officer with a disability, and nothing other than the presence of such person at a publicly accessible site would serve the state's legitimate interest in public attendance and participation in the decision-making process. While teleconferencing may consist of electronic connection through either audio, video, or both (Gov. Code, § 54953, subd. (b)(4)), no camera focused upon a member in a remote location closed to the public may detect the presence of other influences, including persons, within that location, and thus cannot with similar effectiveness serve the public's interest in "curb[ing] misuse of the democratic process . . . ." (Cohan v. City of Thousand Oaks, supra, 30 Cal.App.4th at p. 555).
Hence, under the circumstances presented, the officer with the disability cannot be reasonably accommodated by the public agency for purposes of the ADA. In this regard, the court in Brickers v. Cleveland Bd. of Educ. (6th Cir. 1998) 145 F.3d 846, 850, stated:
 "To allow a finder of fact to ignore the lifting requirement set forth in Ohio law would force a Hobson's choice on the Board, leaving the Board either to subject itself to potential ADA liability for refusing to hire those who cannot lift, or to subject itself to potential penalties from the state for failing to adhere to state law, to say nothing of the possible tort liability the Board might face should a child suffer an injury as a result of an attendant's inability to lift. [Citation.] Therefore, a legally-defined job qualification is by its very nature an essential function under § 12111(8), irrespective of whether the employer adheres to that requirement in all cases. [Citation.]"
Finally, we reject the suggestion that with respect to city advisory board members, a different result may be reached under title II (§§ 12131-12165) of the ADA, pertaining to services, programs or activities of public entities. Section 12132 states:
 "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."
For purposes of title II, section 12131(2) defines "qualified individual with a disability" as follows:
 "The term `qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."
Do the words "participation in . . . the services, programs, or activities of a public entity" include participation as a member of a government advisory board? (See 28 C.F.R. § 35.130(b)(1)(vi).)[3] An advisory board appointed by a city council is established to provide advice and recommendations to the council, as an integral aspect of the council's deliberative process, on a particular subject of municipal concern, and not for the purpose of providing advisory board membership as a service, program, or activity for the general public. While the public is invited to participate in the meetings of an advisory board by way of attendance and comment, it is not invited to participate by way of membership on the board. We thus believe that obtaining or retaining a position on an advisory board does not constitute a "receipt of services" or a "program" or "activity" provided by the city for purposes of title 2 of the ADA. (See Zimmerman v. State Dept. of Justice (9th Cir. 1999)170 F.3d 1169, 1174, 1176.)
Moreover, a qualified individual with a disability, within the meaning of section 12131(2), must meet the "essential eligibility requirements" for the receipt of services or the participation in programs or activities provided by the public entity. The words "essential eligibility requirements" are the functional counterpart of the words "essential functions of employment" under section 12111(8) for purposes of title I. Consequently, even if membership on an advisory board were cognizable under title II, the ability to attend a meeting of the board at a location accessible to members of the public, including individuals with disabilities, would constitute an essential eligibility requirement.
It is concluded that a city is not required under the federal ADA to provide, as an accommodation for a disabled member of its city council or an advisory board who is unable to attend a regularly scheduled meeting of the council or board, a teleconferencing connection at the member's place of residence where members of the public are not permitted to be present.
 * * * * *
[1] All references hereafter to title 42 of the United States Code are by section number only.
[2] The term "employee" is not defined in the ADA other than as an individual employed by an employer. (§ 12111(4).) The term "employer" is generally defined as a person engaged in an industry affecting commerce who has 25 or more employees. (§ 12111(5).) Is an elected member of a city council, or an appointed member of an advisory board, an employee of the city? We note that "employee" is similarly defined in the Equal Employment Opportunity Act (title VII of the Civil Rights Act of 1964), except for the express exclusion of "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." (§ 2000e(f).) No such exception is contained in the ADA. Nevertheless, "[w]hen a statute does not defined a term, we generally interpret that term by employing the ordinary, contemporary, and common meaning of the words that Congress used." (United States v. Iverson (9th Cir. 1998) 162 F.3d 1015, 1022.) Are the elected or appointed officers of a city "employees" within the ordinary meaning of that term? We need not resolve this question since we base our ultimate determination upon alternative grounds.
[3] Title II of the ADA is administered and regulations thereunder promulgated by the United States Department of Justice.