NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0450n.06

No. 22-3316

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KENNY WOODRUFF,

    Plaintiff-Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

**FILED**

Nov 08, 2022

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

---

Before: BATCHELDER, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Kenny Woodruff worked as a highway technician for the Ohio Department of Transportation. The Department placed him on administrative leave after it learned he was taking prescribed Percocet because it believed the use of opioids violated federal regulations. The Department later fired Woodruff because it was not satisfied that he was medically cleared to return to work. Woodruff sued, and the district court granted summary judgment in favor of the Department. We affirm.

I.

Woodruff worked as a highway technician for the Department. In that position, Woodruff was required to have a commercial driver's license and to operate heavy machinery. After a motorcycle accident and failed surgery, Woodruff began taking prescribed Percocet.

The Department placed Woodruff on paid administrative leave after it learned about his opioid use because it was concerned Woodruff would violate federal regulations if he continued

to work as a highway technician while taking Percocet. The Department gave Woodruff a letter to give to his doctor, asking if Woodruff could safely perform his job while taking opioids. Certified Nurse Practitioner Sarah Brown wrote a letter to the Department stating, in relevant part, that:

> [Woodruff] denies any impairment in cognition with the medication and he has signed a contract with us agreeing not to drive or operate heavy machinery under the influence of his pain medication. [Woodruff] is ok to return to work without restrictions as long as he continues to deny any impairment in cognition with his pain medication, and as long as his employer is aware of his current medications and in agreement for patient to continue his current job responsibilities on his current regimen.

The Department was not satisfied with this letter, so it scheduled an independent medical examination with Dr. Seth Vogelstein. Following the examination, Dr. Vogelstein opined that Woodruff could not safely work while taking opioids. After an administrative hearing, Woodruff was "involuntarily disability separated."

Woodruff sued the Department, alleging that it violated the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, by failing to accommodate his disability and discriminating against him because of his disability. During discovery, Woodruff obtained an affidavit from Dr. Vogelstein, in which Dr. Vogelstein stated that Woodruff could safely work as a highway technician. Despite this new evidence, the district court granted summary judgment in favor of the Department. This appeal followed.

## II.

We review de novo the district court's grant of summary judgment. *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the record in the light most favorable to the nonmovant. *Wilmington Tr. Co.*, 859 F.3d at 370.

"[T]o recover on a claim of disability-based discrimination under the Rehabilitation Act, an employee must establish that: '1) he is an individual with a disability; 2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) he suffered an adverse employment action solely by reason of his handicap.'" *Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011) (quoting *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (brackets omitted)). Woodruff and the Department do not dispute that his shoulder pain qualifies as a disability or that his firing was an adverse employment action related to his handicap. But they do dispute whether he was otherwise qualified to work as a highway technician. An employee must meet all legal requirements for a job to be "otherwise qualified" for it. *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998). The Department concluded that Woodruff was not qualified to work as a highway technician because he could not meet the requirements of 49 C.F.R. § 382.213(b), which provides that:

> No driver shall report for duty or remain on duty requiring the performance of safety-sensitive functions when the driver uses any non–Schedule I drug or substance that is identified in the other Schedules in 21 CFR part 1308 except when the use is pursuant to the instructions of a licensed medical practitioner, as defined in § 382.107, who is familiar with the driver's medical history and has advised the driver that the substance will not adversely affect the driver's ability to safely operate a commercial motor vehicle.

Woodruff first argues that Brown's letter fulfills this requirement. Brown's letter asserts that Woodruff's Percocet use had not been a problem in the past, that he signed a contract stating that he would not operate heavy machinery while under the influence of his medication, and that he could safely return to work with the Department's approval "as long as he continues to deny any impairment in cognition with his pain medication." But this statement stops short of advising

Woodruff or the Department that his Percocet use would not adversely affect his ability to safely operate a commercial motor vehicle. Rather, it tacitly concedes that Woodruff's Percocet use *could* become a problem, but that he should be safe to continue working as long as he appropriately managed his medication. Given this concession, Brown's letter does not fulfill subsection (b)'s requirements.

Next, Woodruff argues that the Department should have followed up with Dr. Vogelstein after he submitted his report opining that Woodruff could not safely work as a highway technician. According to Woodruff, if the Department had done so, it could have learned the information Dr. Vogelstein included in his later affidavit. But Woodruff does not argue that the affidavit itself should be considered when determining whether he fulfilled subsection (b)'s requirements. Nor could he, because Dr. Vogelstein did not complete his affidavit until months after Woodruff's termination. It is Woodruff's burden to show that the Department knew he was "otherwise qualified" when it fired him. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996); *Burns v. City of Columbus, Dept. of Pub. Safety, Div. of Police*, 91 F.3d 836, 843–44 (6th Cir. 1996). Although the information in the affidavit was favorable to Woodruff, it cannot be used to fulfill subsection (b)'s requirements because Dr. Vogelstein completed his affidavit after Woodruff's termination.

Woodruff's final argument is that the Department failed to make a proper individualized inquiry before terminating him. An employer must make an "individualized inquiry" to determine whether an employee is qualified for a position. *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014). "The individualized inquiry is an interactive process in which both parties have a duty to participate in good faith." *Id.* (internal quotation marks omitted). The inquiry's "purpose is to identify the precise limitations resulting from the disability" in an attempt to identify a reasonable

accommodation. *Id.* (internal quotation marks omitted). "If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *Id.* (citation omitted).

The Department asked Woodruff to get a letter from his medical provider after it learned of his opioid use. After it concluded Brown's letter was insufficient, the Department scheduled an independent medical examination in which it specifically asked Dr. Vogelstein to answer two questions related to Woodruff's ability to work as a highway technician while taking Percocet. Dr. Vogelstein answered those questions in his report; his answers do not suggest that further inquiry would lead to a different conclusion. The Department also allowed Woodruff to provide additional information before his termination. Woodruff did not take advantage of that opportunity, nor did he take advantage of the opportunity to seek reinstatement, even though he obtained Dr. Vogelstein's affidavit within the two-year period in which he could seek reinstatement. Based on the record before us, the Department repeatedly sought to help Woodruff fulfill subsection (b)'s requirements. In contrast, Woodruff took no action on his own until after filing this lawsuit. Thus, there is no genuine dispute that any breakdown in the process can be attributed to Woodruff. Accordingly, the Department satisfied its individualized-inquiry obligation. *See id.*

### III.

For these reasons, we affirm the district court's judgment.