**Odis D. HALL, Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE; Paul N. Carlin; and Chester Cole, Defendants–Appellees.**

No. 86–2082.

United States Court of Appeals, Sixth Circuit.

Submitted Dec. 15, 1987.

Decided Aug. 23, 1988.

---

Mark H. Magidson, Detroit, Mich., for plaintiff-appellant.

Peter A. Caplin, Asst. U.S. Atty., Detroit, Mich., for defendants-appellees.

Before JONES, WELLFORD and BOGGS, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant, Odis D. Hall, brought this action under the Rehabilitation Act of

1973, 29 U.S.C. § 701, *et seq.* (1982), alleging that the United States Postal Service improperly denied her a position as a distribution clerk based on her physical handicap. The district court granted summary judgment for the defendants. Because we find that there are genuine issues of material fact that remain unresolved, we reverse the court's grant of summary judgment and remand for further proceedings in the district court.

## I.

The underlying facts giving rise to this lawsuit are largely undisputed. Plaintiff, Odis D. Hall, who is a 47 year old woman, began working with defendant, the United States Postal Service, in 1968 as a letter carrier in the Detroit Region. At the time she was hired, Hall passed two tests; one for a clerk's position and the other for letter carrier. While she could have taken either position, she chose to be a letter carrier. In that capacity, Hall sorted and delivered mail on foot, a job which she held for five years. Occasionally during this period she performed what she termed "clerk work" at the main post office during the Christmas rush. Hall could not say exactly what type of clerk work she was doing, but she did indicate that no heavy lifting was required and that the job basically involved sorting mail.

On June 11, 1973, while in the course of delivering mail, an automobile went out of control and struck Hall, causing injury to her right hip, foot and back. As a result of this on-the-job injury, Hall received Workers' Compensation benefits under the Federal Employee Compensation Act ("FECA"). She continued to receive this compensation until June 1982, when it was determined that she was no longer disabled.

On October 7, 1984, fifteen months after she stopped receiving FECA benefits, Hall wrote the Detroit Postmaster requesting that she be "reinstated as a Distribution Clerk at the General Mail facility." J. App. at 105–06. She did not request reinstatement to her carrier position because she could no longer do all of the walking, lifting and bending required of that position. Hall asked to become a distribution clerk because she "assumed" that it was the same position that she had previously performed with the postal service during the Christmas rush. Moreover, she believed that her physical limitations would not prevent her from doing the work that she formerly performed as a clerk at the main post office. According to Hall's deposition: "Whatever I was doing then I can do now." *Id.* at 66.

The job description of a distribution clerk states that the position requires, among other things, lifting up to 70 pounds, kneeling and repeated bending. David Adams, a Supervisor of Employment and Placement at the Detroit Post Office, described in his affidavit the basic functions of a distribution clerk:

> The job involves substantial amounts of heavy lifting and bending. Distribution clerks must lift heavy sacks of mail, dump them out and then sort the mail. They also must lift parcel post packages weighing up to 70 pounds. The heavy lifting is an essential part of the job, as it is often done repetitively throughout the day.

*Id.* at 96.

During the course of the application process, Hall was found to be unable to perform the physical requirements of the job —particularly the heavy lifting and bending—and therefore medically unsuited for the distribution clerk position. According to Adams, this conclusion was based in part upon the opinion of Hall's treating physician who stated that she was able to perform employment not requiring excessive bending and strenuous lifting. The Postal Service's examining physician concurred with this conclusion stating, in his report dated April 15, 1985, that Hall could not meet the criteria of heavy lifting and bending without serious risk to her health. Therefore, on May 16, 1985, Hall's application was denied.

During the first week of May 1985, prior to her application being formally denied, Hall went to the Equal Employment Opportunity ("EEO") Office at the Detroit Post

Office to file a complaint that she was being discriminated against by the Post Office due to her physical handicap. According to Hall, she spoke with an EEO officer and asked that there be an investigation regarding the denial of her application. Hall alleges that she was told by the officer at this time that she would have to wait until she received the actual denial or termination from the Post Office before any action could be taken. *Id.* at 6. Thereafter, in the third week of May 1985, after receiving the letter informing her that her application was denied, Hall went back to the EEO office and renewed her request that an investigation be undertaken regarding her complaint of handicap discrimination. *Id.* at 7.

After 180 days passed without any action by the EEO office, Hall, on December 30, 1985, filed her complaint in the United States District Court for the Eastern District of Michigan against the United States Postal Service, Paul N. Carlin, then Postmaster General of the United States,[1] and Chester Cole, Postmaster of the Detroit, Michigan Post Office.[2] In her complaint, Hall alleged she had been denied a position with the Postal Service because of a physical handicap in violation of the Rehabilitation Act of 1973 ("the Rehabilitation Act" or "the Act"), 29 U.S.C. § 701 *et seq.* (1982), the regulations issued thereunder, 29 C.F.R. § 1613.701 *et seq.* (1987), and the Michigan Handicappers Civil Rights Act.

Prior to answering Hall's complaint, the defendants, on March 11, 1986, filed a motion to dismiss, or in the alternative, for summary judgment. In this motion, the defendants argued, among other things, that the district court did not have jurisdiction over Hall's Rehabilitation Act claim because she had not exhausted her administrative remedies, and, further, that her claim for relief under Michigan law must be dismissed because the Rehabilitation Act provides the exclusive remedy for a federal employee's claim of handicap dis-

crimination. By order dated May 20, 1986, Judge Horace Gilmore granted defendants' motion to dismiss as to the claim filed pursuant to the Michigan Handicappers Civil Rights Act, but denied the motion as to the claim arising under the Rehabilitation Act.

Thereafter, on May 30, 1986, the defendants filed their answer to plaintiff's Rehabilitation Act claim, and put forth three affirmative defenses, including the defense that plaintiff had failed to exhaust her administrative remedies.

The parties conducted limited discovery and, on September 19, 1987, the defendants filed a motion for summary judgment. In their motion, the defendants argued that the Rehabilitation Act forbids discrimination in employment against an "otherwise qualified handicapped individual," which is defined as a person who, with or without reasonable accommodation, can perform the *essential functions* of the position in question. In defendants' view, the 70 pound lifting requirement is an essential function of the distribution clerk position for which Hall applied. The defendants argued that since Hall admittedly could not perform this heavy lifting and since they were not required by the Act to accommodate Hall by eliminating this "essential" function, Hall was not an "otherwise qualified handicapped individual." Thus, the defendants argued, she could not maintain a claim of handicap discrimination under the Rehabilitation Act.

In his oral opinion, Judge Gilmore agreed with defendants' contention that the 70 pound lifting requirement for distribution clerks was an essential function of the job and that there was no factual question as to this issue. The court also agreed with defendants' argument that the Postal Service did not have to modify the lifting "requirement" so that Hall could perform the job, because this would result in the elimination of an essential function of the distri-

---

**1.** In January 1986, Albert V. Casey was named Postmaster General of the United States, replacing Paul N. Carlin. Pursuant to Fed.R.Civ.P. 25(d)(1), Casey's name has been automatically substituted as a party.

**2.** By order dated May 20, 1986, Chester Cole was dismissed as a party to this lawsuit.

bution clerk position. Such an accommodation, in the view of the district court, would not be reasonable and, therefore, was not required by the Act.

Because Hall believed there were genuine issues of material fact as to whether the lifting requirement was an essential function and as to whether a reasonable accommodation could be made, she timely filed this appeal.

## II.

The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1982), is a program designed to assist and protect the rights of the handicapped. Title V of the Act prohibits federal agencies, federal contractors, and recipients of federal funds from discriminating against handicapped individuals. Toward this end, section 504 of the Act provides in pertinent part:

> No *otherwise qualified handicapped individual* in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency *or by the United States Postal Service.*

*Id.* § 794 (emphasis added). In addition, section 501 of the Act requires federal employers, including the Post Office, to undertake *affirmative action* on behalf of the handicapped. *Id.* § 791(b). This affirmative action obligation goes beyond the obligation set forth in section 504, which, by its terms, requires only non-discrimination. *See generally Southeastern Community College v. Davis,* 442 U.S. 397, 410–11, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). As one court observed:

> [S]ection 501 "impose[s] a duty upon federal agencies to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion."

*Prewitt v. United States Postal Service,* 662 F.2d 292, 306 (5th Cir. Unit A 1981) (quoting *Ryan v. FDIC,* 565 F.2d 762, 763 (D.C.Cir.1977)); *see also Mantolete v. Bolger,* 767 F.2d 1416, 1421 (9th Cir.1985).

The Equal Employment Opportunity Commission ("EEOC"), the agency charged with the enforcement of the Act, has promulgated administrative regulations that define the duties of federal agencies, such as the Post Office, under section 501. The regulations ambitiously declare "[t]hat the Federal Government shall become a model employer of handicapped individuals," 29 C.F.R. § 1613.703 (1987), and make clear that federal employers have an obligation to make reasonable accommodations for handicapped job applicants:

> (a) An agency *shall make* reasonable accommodation to the known physical or mental limitations of a *qualified handicapped applicant* or employee unless the *agency can demonstrate* that the accommodation would impose an undue hardship on the operation of its program.
>
> (b) Reasonable accommodation may include, but shall not be limited to: (1) Making facilities readily accessible to and usable by handicapped persons, and (2) *job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices,* appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

29 C.F.R. § 1613.704 (1987). The regulations also define the factors that should be considered in determining whether an accommodation would impose an undue hardship on the operation of the agency in question. *Id.* § 1613.704(c).[3]

While it has not always been so, it is now clear, at least in this circuit, that federal employees, including Postal Service

---

**3.** These factors are: 1) the overall size of the agency's program with respect to number of employees, number and types of facilities and size of budget; 2) the type of agency operation, including the composition and structure of the agency's work force; and 3) the nature and the cost of the accommodation.

employees, alleging handicap discrimination in employment may maintain private causes of action against their employers under *both* sections 501 and 504 of the Rehabilitation Act.[4] *Smith v. United States Postal Service*, 766 F.2d 205, 206 (6th Cir.1985) (per curiam); *Smith v. United States Postal Service*, 742 F.2d 257, 259–60 (6th Cir.1984). *See also Gardner v. Morris*, 752 F.2d 1271, 1277–78 (8th Cir. 1985); *Mackay v. United States Postal Service*, 607 F.Supp. 271, 274 (E.D.Pa. 1985). In her complaint, Hall alleges violations of section 504 of the Act and of the administrative regulations, discussed above, adopted under section 501. As such, we view her complaint as alleging causes of action under section 504 as well as under section 501.

Because there is no dispute that Hall was handicapped within the meaning of the Act and was denied a position because of her handicap, the essential inquiry in this case, under either section of the Act, is whether Hall was otherwise qualified for the job of distribution clerk. In terms of the regulations, Hall would meet this requirement—and thus be considered a "qualified handicapped person"—if, "with or without reasonable accommodation, [she] can perform the *essential functions* of the position in question without endangering" her own health and safety or that of others. 29 C.F.R. § 1613.702(f) (1987) (emphasis added). This definition is essentially the same as that which courts have used for the operative term in section 504 of the Act— "otherwise qualified handicapped individual." *See, e.g., School Bd. of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123,

1131 n. 17, 94 L.Ed.2d 307 (1987); *Mantolete v. Bolger*, 767 F.2d 1416, 1421 (9th Cir.1985); *Jasany v. United States Postal Service*, 755 F.2d 1244, 1250 (6th Cir.1985).

 It is evident from a review of the case law in this area that the "otherwise qualified" inquiry requires a consideration not only of the handicapped applicant's ability to perform the job's essential function, but also whether a reasonable accommodation by the employer would enable the handicapped person to perform those functions. *See Arline*, 107 S.Ct. at 1131 n. 17; *Brennan v. Stewart*, 834 F.2d 1248, 1261–62 (5th Cir.1988). As the Supreme Court recently explained:

> In the employment context, an otherwise qualified person is one who can perform "the essential functions" of the job in question. When a handicapped person is not able to perform the essential functions of the job, the court *must also consider* whether any *"reasonable accommodation" by the employer would enable* the handicapped person to perform those functions.

*Arline*, 107 S.Ct. at 1131 n. 17 (citations omitted & emphasis added). To some extent, these inquiries are interrelated in that courts have held that an employer, including a federal employer, is not required to accommodate a handicapped individual by *eliminating* one of the essential functions of the job. *Jasany*, 755 F.2d at 1250. In other words, an accommodation that eliminates an essential function of the job is not reasonable.

 In determining whether a handicapped individual can perform the essential functions of a position and, if not, whether

---

**4.** It is also clear that a handicapped person alleging discriminatory treatment must exhaust administrative remedies as a condition precedent to bringing an action under either section 501 or section 504. *See Smith v. United States Postal Service*, 742 F.2d 257, 262 (6th Cir.1984). In her complaint, Hall alleges that she notified the EEO office of her claim of handicap discrimination; asked that an investigation be undertaken with regard to her claim; and, receiving no response from the agency after 180 days, filed this lawsuit in the district court. In their motion to dismiss and/or for summary judgment, the defendants argued that Hall's efforts were not sufficient to satisfy the exhaustion

requirement and that, accordingly, her Rehabilitation Act claims must be dismissed for failure to state a claim and for lack of subject matter jurisdiction. The district court did not accept this argument and declined to dismiss Hall's Rehabilitation Act claims. Defendants did not object to this conclusion. Moreover, in their subsequent summary judgment motion, defendants did not reassert the exhaustion issue, nor did they raise the issue in their briefs in this court. Accordingly, while we note that Hall's compliance with the exhaustion requirement is not entirely free from doubt, we decline to address that issue because it is not properly before us.

a reasonable accommodation will enable him or her to do so, a district court "will need to conduct an *individualized inquiry* and make appropriate findings of fact." *Arline*, 107 S.Ct. at 1131 (emphasis added). As stated by the Eleventh Circuit in its opinion in *Arline:*

> While legitimate physical qualifications may be essential to the performance of certain jobs, both that determination and the determination of whether accommodation is possible are *fact-specific issues.* The court is obligated to scrutinize the evidence before determining whether the defendant's justifications reflect a well-informed judgment grounded in a careful and open-minded weighing of the risks and alternatives, or whether they are simply conclusory statements that are being used to justify reflexive reactions grounded in ignorance or capitulation to public prejudice.

*Arline v. School Bd. of Nassau County,* 772 F.2d 759, 764–65 (11th Cir.1985) (citations omitted & emphasis added), *aff'd,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

■ Applying these principles to this case, we believe the summary judgment order was inappropriate. In our view, there are genuine issues of material fact as to whether Hall could perform the essential functions of the distribution clerk position and, if she could not, whether a reasonable accommodation by the Postal Service would enable her to perform those functions.

In holding that Hall could not perform an essential function of the distribution clerk position, the lower court concluded that it must accept the Postal Service's job description as controlling. Since the job description states that a distribution clerk must be able to lift 70 pounds, and since Hall admittedly could not lift that much, the court concluded that there was no factual issue as to Hall's inability to perform an essential function of the job of distribution clerk. We believe this was error. As the court stated in *Arline,* the determination of whether physical qualifications are essential functions of a job requires the court to engage in a highly *fact-specific*

inquiry. *Arline,* 772 F.2d at 764–65. Such a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved.

In our view, Hall has raised a legitimate factual dispute as to whether the 70 pound lifting requirement was indeed essential. Hall spent time doing clerk work in the early 1970's and, as she stated in her affidavit, never observed any clerks—whether they be "distribution clerks" or something else—doing any heavy lifting. As Hall points out in her brief, if lifting were "essential" to the position, she most likely would have had to do some lifting herself, or at least would have observed others doing heavy lifting, while she worked in a clerk capacity. While the Postal Service suggests that Hall's prior clerk experience was not in a *distribution* clerk position, the Postal Service was unable to indicate what type of clerk position this was, even though that information presumably would be within its control. Nor did the Postal Service suggest that Hall's observations regarding the lifting requirements of other clerk positions were not accurate.

We are not persuaded that the affidavit of David Adams, the Employment and Placement Supervisor at the Detroit Post Office, removes the genuine factual dispute regarding the essential functions of the distribution clerk position. Adams's affidavit references the job description, avers that distribution clerks must do substantial amounts of heavy lifting, and concludes that "heavy lifting as an essential part of the job, as it is done repetitively every day." J.App. at 96. In the first place, the statement that the lifting requirement is "essential" is a legal conclusion. Adams's assessment of what is "essential" may differ from a court's conclusion after it has conducted the "individualized inquiry" required by *Arline.* Further, while Adams asserts that distribution clerks must lift heavy sacks of mail, he does not state that all distribution clerks must do so on a regular basis, nor does he say that clerks could not do the job if they could lift only 25–30 pounds, as Hall can. In short, we think

that there are material factual questions as to whether the lifting requirement is such an essential function of the job so as to justify the Postal Service's refusal to hire Hall. Accordingly, summary judgment on this issue was inappropriate.

Even if it were concluded that no factual questions existed with respect to whether the lifting requirement was an essential function of the job, there is still the question as to whether Hall could perform that function if she were reasonably accommodated. *See Arline*, 107 S.Ct. at 1131 n. 17. The district court concluded that no factual questions existed with respect to whether an accommodation was necessary. The court based this conclusion on its view that to require an accommodation in this case would result in the elimination of an essential function of the job. We believe this was error.

■ As we mentioned earlier, federal employers have an affirmative obligation to make reasonable accommodations for handicapped employees. The burden is on the *employer* to present credible evidence that a reasonable accommodation is not possible in a particular situation. 29 C.F.R. § 1613.704(a); *Jasany*, 755 F.2d at 1251 (citing *Prewitt v. United States Postal Service*, 662 F.2d 292, 308 (5th Cir. Unit A 1981)). An accommodation is not reasonable, and will therefore not be required, if, for instance, it imposes an undue hardship upon the operation of the federal employer. However, this determination, like the essential function determination, is highly fact-specific and requires the court to engage in an individualized inquiry to ensure that the employer's justifications "reflect a well-informed judgment grounded in a careful and open-minded weighing of the risks and alternatives...." *Arline*, 772 F.2d at 765. Thus, the fact-specific, individualized inquiry as to whether a particular accommodation is reasonable should reflect the practicability to the enterprise involved of making the necessary accommodation.

In this case, the Postal Service failed to introduce any evidence suggesting that it could not reasonably accommodate Hall. Therefore, the lower court was completely unable to make the kind of individualized inquiry on the accommodation issue that is required by *Arline*. Moreover, while the court was correct in stating that an employer is not required to eliminate an "essential function" in accommodating a handicapped individual, the Postal Service made absolutely no showing that this would occur if they attempted to accommodate Hall. Indeed, the court (and the Postal Service in its brief) evidently operated under the assumption that *every* accommodation relating to an essential function of a position necessarily *eliminates* that function. This is simply not the law. Because a particular function is found to be essential does not relieve the federal employer of its burden of showing that the handicapped individual cannot be reasonably accommodated. To hold otherwise, as we think the district court did, is to ignore the reasonable accommodation aspect of the "otherwise qualified" inquiry.

For the foregoing reasons, we RE-VERSE the grant of summary judgment in the defendants' favor and REMAND to the district court for further proceedings.

WELLFORD, Circuit Judge, dissenting.

Hall was a letter carrier before being injured, and in 1982, she was finally determined no longer to be disabled after she had protested this decision administratively. (She requested a hearing by a hearing representative who found her no longer disabled, and this decision was reviewed by the Office of the Director for Federal Employees' Compensation.)[1] Hall specifically requested reinstatement "as a Distribution Clerk at the General Mail Facility." The job description for this position included a requirement of lifting up to 70 pounds, which was, according to postal authorities, "an essential part of the job," as found by the district court. Hall testified that she

---

1. Hall's letter of October 7, 1984 to the Postmaster at Detroit concedes that her claim for contin-

ued "Workman's" compensation was denied by the "review" Board.

had previously done "clerk work at the main post office ... during the Christmas rush." (Not "any special job" and she did not know whether the job she did was, or was not, classified as "distribution clerk work.") Hall said that during this short special season work she was not called upon to do any lifting of heavy mail sacks.

It is unquestioned that from a medical standpoint, Hall cannot, without hazard to her health, meet the criteria for the distribution clerk job. Just before official denial of her re-employment for this reason, Hall claimed to speak to someone in the Detroit EEO office of the Postal Service to assert discrimination by reason of her physical handicap. After the official denial of her application as distribution clerk, Hall made a further oral request of the EEO officer to investigate her rejection but not specifically based on her asserted handicap. After 180 days without a response, she filed this action under the Rehabilitation Act (29 U.S.C. § 701) *et seq.* and the Michigan Handicappers Act. I believe the district court was correct in granting the defendants judgment. Accordingly, I dissent.

The Rehabilitation Act prescribes only that "otherwise qualified" persons shall not be excluded from Postal Service Work by reason of a handicap. 29 U.S.C. § 794.[2] Under the statutory scheme, the Postal Service must make "reasonable accomodation" to a "qualified applicant." Defendants claimed in their motion for summary judgment that plaintiff failed to exhaust her administrative remedies before proceeding with this suit. There is no record that Hall ever filed any formal *written* complaint of handicap discrimination. Plaintiff has the burden of showing that she fulfilled administrative requirements before proceeding into federal court to sue the Postal Service. She has merely asserted that she wanted and asked about an EEO officer's investigation "concerning her complaint of handicap discrimination."

*She has never claimed or demonstrated any filing of a written complaint asserting handicap discrimination* as is required, nor has she asserted any excuse for not following this necessary prerequisite to this suit.[3] Defendants have questioned the exhaustion necessity, and should have been granted a motion to dismiss on this basis. *Smith v. United States Postal Service,* 742 F.2d 257 (6th Cir.1984).

Even if not dismissed on grounds of failure to exhaust, defendants were entitled to summary judgment for the reasons stated by Judge Gilmore. Hall asserted a claim in her complaint only under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.,* specifically § 794, and the regulations spelling out a "reasonable accomodation." She did *not* assert a claim under § 501, nor claim that defendants had any affirmative duty toward her except "not [to] discriminate against a qualified physicially or mentally handicapped person."

Plaintiff has not demonstrated, as a matter of law, that she can perform an essential function of the position she herself sought *in writing. Jasany v. United States Postal Service,* 755 F.2d 1244 (6th Cir.1985). *See also School Board of Nassau County, Fla. v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987). As Judge Jones recognizes, "an accomodation that eliminates an essential function of the job is not reasonable." That plaintiff served in a short time, part-time clerk position at some earlier period which did not, according to her recollection, require heavy lifting or "excessive bending" is no basis upon which to counter the undisputed requirements of the particular job she sought—distribution clerk. There was no factual material issue as to Hall's inability to perform that job as to one or more of its essential functions. The grant of summary judgment was clearly indicated. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**2.** Judge Jones makes reference to 29 U.S.C. § 791, which sets out that handicapped persons, if qualified, are to be afforded "equal opportunity" to do work with the Postal Service. 29 U.S.C. § 791. Plaintiff made no such reference in her complaint.

**3.** Hall stated that "she assumed that the *EEO officer* had filed or completed the necessary paperwork" based on an oral complaint which is uncertain. (Emphasis added).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On either or both bases herein discussed, judgment should be affirmed for defendants.