As such, we find that the FHWA's decision denying Parker a waiver from the federal vision regulations is arbitrary and capricious. Accordingly, the case is remanded so that the FHWA may create a functional capacity test consistent with its findings that an individual's driving record is indicative of future performance which will evaluate Parker's driving skills based upon his individual capabilities.

**REVERSED and REMANDED**.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0094P (6th Cir.)
File Name: 00a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JERRY W. PARKER,
                    *Petitioner,*

          *v.*                              No. 98-4331

UNITED STATES DEPARTMENT
OF TRANSPORTATION,
FEDERAL HIGHWAY
ADMINISTRATION, and THE
UNITED STATES OF AMERICA,
                    *Respondents.*



On Petition for Review of an Order of the
Federal Highway Administration,
United States Department of Transportation.

Argued: December 13, 1999

Decided and Filed: March 17, 2000

Before: MERRITT and SILER, Circuit Judges;
          BECKWITH, District Judge.[*]

---

[*]The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Gerald W. Von Korff, RINKE & NOONAN, St. Cloud, Minnesota, for Petitioner. Matthew M. Collette, U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Respondents.
**ON BRIEF:** Gerald W. Von Korff, RINKE & NOONAN, St. Cloud, Minnesota, for Petitioner. Matthew M. Collette, Michael Jay Singer, U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Respondents.

———————————

**OPINION**

———————————

SILER, Circuit Judge. Petitioner, Jerry W. Parker, appeals the Federal Highway Administration's ("FHWA") decision to deny him a license to drive commercial trucks in interstate commerce because he suffers from monocular vision and is missing part of his left arm. Because the FHWA's decision was arbitrary and capricious, we REVERSE and REMAND.

**I. BACKGROUND**

Parker is a commercial truck driver who suffers from a congenital eye condition known as Coates disease. As a result, he has corrected vision of 20/20 in his left eye and corrected vision of 20/300 in his right eye. He also had part of his left arm amputated after a grain elevator accident twenty years ago. Although he is licensed to drive commercial trucks intrastate in Ohio, Parker fails to meet the minimum federal safety standard for interstate commercial truckers which requires a:

[D]istant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately

and make appropriate findings of fact.'")(quoting *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 (1987)).

The Department of Transportation ("DOT") concedes that it must make an individual inquiry into the merits of Parker's application, but asserts that it lacks sufficient data on the performance of drivers with multiple disabilities. As a consequence, there is no standard or test that the FHWA can rely on to ensure that granting a waiver to someone with multiple disabilities would achieve an equal or greater level of safety than if the waiver was not granted. *See Rauenhorst*, 95 F.3d at 723 ("[S]pecific waivers must be grounded on specific test or standards."). Although it admits that it would probably grant Parker a waiver if he only suffered from one of his disabilities, the DOT contends that it cannot issue a waiver to a driver with multiple impairments without evidence that such waiver is consistent with the public interest and the safe operation of a CMV. *See Ward v. Skinner*, 943 F.2d 157 (1st Cir. 1991).

We find the DOT's argument unpersuasive. When the FHWA initiated the waiver program, it relied on several studies which indicated that "the best predictor of future performance by a driver is his past record of accidents and traffic violations." 63 Fed. Reg. 1524, 1525 (1998). Parker has clearly demonstrated that despite his multiple impairments, he is able to safely operate a CMV. Furthermore, the DOT has not even attempted to consider a driving test with a review of Parker's safety record. By failing to assess Parker's actual capabilities, the DOT has in essence created a per se rule against granting vision waivers to individuals with multiple disabilities, thereby limiting such individuals' employment opportunities. This stands in direct contradiction to the goals and purpose of the Rehabilitation Act which is to provide equal opportunities for disabled individuals, including assisting such individuals in obtaining substantial employment. 29 U.S.C. §§ 701(a)(6)-(b)(2).

## II. STANDARD OF REVIEW

The Administrative Procedure Act provides that an agency's action may not be set aside unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Rauenhorst v. Department of Transportation*, 95 F.3d 715 , 718-19 (8th Cir. 1996).   "The scope of review is 'narrow and a court is not to substitute its judgment for that of the agency.'" *Rauenhorst.*, 95 F.3d at 718-19 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).   However, the agency must offer a satisfactory explanation of its reasons based on the  relevant data. *Motor Vehicle Mfrs. Ass'n,* 63 U.S. at 43.

## III. DISCUSSION

To be eligible for a federal vision waiver, an applicant must satisfy the CMV driver qualifications under 49 C.F.R. Part 39, which provides that a person is physically qualified to drive a CMV as long as he or she "has no loss of a foot, a leg, a hand, or an arm...." 49 C.F.R. § 391.41(b)(1).[6] Because Parker is missing part of his left arm, the FHWA denied his request for a vision waiver. Under § 504 of the Rehabilitation Act, however, the FHWA must make an individual assessment of Parker's driving capabilities before it can deny his request for a vision waiver. *See Hall v. United States Postal Service*, 857 F.2d 1073, 1078-79 (6th Cir. 1988)("In determining whether a handicapped individual can perform the essential functions of a position and, if not whether a reasonable accommodation will enable him or her to do so, a district court 'will need to conduct an individualized inquiry

---

[6]A limb disability waiver may be granted to an individual who is not physically qualified to drive under § 391(b)(1) as long as that individual "is otherwise qualified to drive a commercial motor vehicle...." 49 C.F.R. § 391.49.  Parker fails to qualify for such a waiver because of his eyesight.

corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vison of at least 70 degrees in the horizontal Meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber  in both eyes.

49 C.F.R. § 391.41(b)(10).[1]  However, under the Motor Carrier Safety Act of 1984, Pub. L.No. 98-554, 98 Stat. 2832 (codified at 49 U.S.C. § 31136(e), formerly 49 U.S.C. § app. 2505(f)), the Secretary of Transportation is authorized to grant waivers from this regulation as long as the waivers "are consistent with the public interest and safe operation of motor vehicles." 49 U.S.C. § 31136(e)(1) (1994), *as amended by* 49 U.S.C. § 31136(e) (1996).  In other words, an exemption for an unqualified driver will be granted if "such exemption would likely achieve a level of safety that is equivalent to, or greater than the level that would be achieved absent such exemption." 49 U.S.C. § 31315(b)(1).

In 1992,  the FHWA initiated a program whereby waivers would be granted to a limited group of visually impaired drivers who failed to meet the federal vision standard,  but had a history of operating a commercial vehicle ("CMV") safely. *See* 57 Fed. Reg. 23370 (1992).  The waiver program served as part of a regulatory review of the medical and physical qualifications placed on CMV drivers in light of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), as well as the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. ("Rehabilitation Act").[2]   The

---

[1]The first federal vision standard was adopted in 1932.  This is the current version of the standard, which has not been modified since 1971. *See* 57 Fed. Reg. 6793, 6793-94 (1992).

[2]When the ADA was enacted, the Secretary of Transportation was given two years to review all motor vehicle safety standards "to ascertain whether the standards conform with current knowledge about the

participants consisted of experienced monocular drivers who met minimal physical requirements and had clean driving records.[3] The FHWA found that, despite their visual impairments, the participants had better driving records than all CMV drivers in general. Thus, the FHWA determined that granting waivers to these visually impaired drivers would be "'consistent with the safe operation of commercial motor

---

capabilities of persons with disabilities and currently available technological aids and devices and whether such regulations are valid under this Act. The Committee expects that the agency will make any necessary changes within the two year period to bring such regulations into compliance with the law. (Of course, a non- discrimination obligation on the part of the Department of Transportation also exists currently under section 504 of the Rehabilitation Act of 1973.)." H.R.Rep. No. 485, 101st Cong., 2nd Sess., pt. 2 at 57 1990 U.S. Code Cong. & Ad. News pp. 303, 339.

[3]In order to qualify for a waiver application, an applicant must:

1) [B]e otherwise qualified under 49 CFR Part 391....;
2) [H]old a valid commercial driver's license to operate a CMV issued after April 1, 1990....;
3) [H]ave had three years' recent experience driving a CMV without (1) license suspension or revocation; (2) involvement in a reportable accident in which the applicant received a citation for a moving violation; (3) conviction for driving a CMV while intoxicated, leaving the scene of an accident involving a CMV, commission of a felony or more than one serious traffic violation involving a CMV; or (4) more than two convictions for any other moving violation in a CMV....; and
4) [P]resent proof from an optometrist or ophthalmologist certifying that the applicant's visual deficiency has not worsened since his or her last examination, that vision in one eye is at least 20/40 acuity, corrected or uncorrected, and that the applicant is able to perform the driving tasks required to operate a CMV.

61 Fed. Reg. 606, 606-07(1996). The applicant must also: "(1) report all citations for moving violations involving a CMV; (2) report the disposition of the charge; (3) report any accident involvement whatsoever while operating a CMV; (4) submit documentation of an annual examination by an ophthalmologist or optometrist; and (5) submit reports of vehicle miles traveled monthly in a CMV." *Id.* at 607.

---

vehicles,'" and "be in the 'public['s] interest.'" 57 Fed. Reg. 23370, 23371 (1992)(quoting former 49 U.S.C. app. § 2505(f)).[4]

In 1996, Parker applied for a federal vision waiver. As part of his application, Parker provided evidence that he had driven over 1.2 million miles in a CMV since 1985 without incident.[5] Despite his impeccable driving record, the FHWA denied Parker's request after it learned that not only did Parker have monocular vision, but he is also missing part of his left arm. The FHWA found that, although there was sufficient evidence to demonstrate that someone with Parker's vision impairment could drive safely, there was insufficient evidence that someone with multiple impairments could operate a commercial vehicle with the same degree of safety as an unimpaired driver. Thus, the FHWA could not find that such an exemption would achieve the same, or a greater, level of safety that would be achieved absent such exemption.

---

[4]In *Advocates for Highway and Auto Safety v. Federal Highway Administration*, 28 F.3d 1288 (D.C.Cir. 1994), the D.C. Circuit found the FHWA's vision waiver program to be arbitrary and capricious because the FHWA needed "the waiver program 'to evaluate the relationships between specific visual deficiencies and the operation of CMVs' while simultaneously determining that the program will not result in a diminution of safety standards." *Id.* at 1294. Because the record lacked any evidence to support the FHWA's conclusion that safety standards would not be diminished, the court found the program to be contrary to law and vacated the rule instituting it. *Id.* On remand the FHWA reviewed all the driver safety and performance data it had collected over the two years that the waiver program had been in place. *See* 59 Fed. Reg. 50887-02, 50890 (1994). Along with new evidence that was not available to the court in *Advocates*, the FHWA confirmed its original determination that granting waivers to monocular drivers who had three years of safe driving experience would not diminish safety standards. *Id.* at 50890-91.

[5]Parker was licensed to drive a CMV interstate from 1985 to December 1993, and thereafter drove his CMV intrastate in Ohio.