**Christine T. GRAY, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 3:99 CV 7671.**

United States District Court, N.D. Ohio, Western Division.

Feb. 22, 2001.

Stewart W. Jones, Joseph J. Solomon, Jr., Jacobs & Solomon, Toledo, OH, for Christine T. Gray, plaintiff.

Jennifer S. Breslin, United States Postal Service, Field Office Law Department, Philadelphia, PA, Ralph J. Lewis, Office Of The U.S. Attorney, Toledo, OH, for United States Postal Service, defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendant's motion for summary judgment (Doc. No. 23) and Plaintiff's motion to strike Defendant's motion for summary judgment (Doc. No. 27). For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

## BACKGROUND[1]

Plaintiff Christine Gray ("Gray") became an employee of Defendant United States Postal Service in January of 1985. At all times relevant to this action, Gray was employed as a "mark-up" clerk in the CFS unit at Defendant's Toledo, Ohio, office.[2] A mark-up clerk is generally engaged in forwarding mail, and performs this job primarily through large amounts of typing. All mark-up clerks in the Toledo, Ohio, office during the relevant time period were female.

In 1997 and 1998, Gray's direct supervisor in the CFS unit was Marian Preston ("Preston"). On days that Preston did not work, Gray's supervisor was Sandra Weaks ("Weaks"). When not acting as a substitute supervisor (a "204B supervisor"), Weaks was a mark-up clerk and co-worker of Gray in the CFS unit. Weaks has testified that she considered Gray a "whiner" who did not perform her share of work within the CFS unit.

On a daily basis in May of 1997, and while within the CFS unit, Preston and Weaks allegedly engaged in discussions regarding frequency of their sexual activity, the male anatomy, and "toys" used during sex. Preston and Weaks also allegedly displayed and commented upon the contents of sexually explicit magazines that came though the unit; in fact, Preston and Weaks allegedly retained some of these magazines for display to members of other units. On at least one occasion, Weaks asked Gray if she had ever used a particular sex toy. Gray found these conversations offensive and refused to participate in them.

---

**1.** For the purposes of resolution of the motion for summary judgment, the facts as presented are drawn from Gray's memorandum in opposition to the motion for summary judgment.

**2.** Gray is still employed by the Defendant, but she is no longer in the "mark-up" division.

In July of 1997, Gray met with a counselor at the Equal Employment Opportunity Commission. She requested anonymous pre-complaint counseling on August 7, 1997, and alleged sexual harassment by Preston and Weaks (in her capacity as an acting supervisor). Gray did not file a complaint based on the counseling.

On February 10, 1998, Gray again made a request for EEOC pre-complaint counseling and subsequently filed an EEOC complaint. At an administrative hearing, the following issues were discussed in relation to Gray's complaint:

(1) [O]n unspecified dates in January 1998 and April 1998, her vehicle was vandalized when someone scratched the words "pollock" and "boo" on her car respectively; (2) on a daily basis during the month of January 1998, management allowed conversations of a sexual nature to continue among employees and periodically management participates in the conversations; (3) every Saturday in January 1998, when [Gray] asked a question about work she was told by a co-worker/204B to be quiet, while other employees were allowed to talk for hours; and (4) on February 6, 1998, at a meeting with management, a co-worker/204B was permitted to vent and yell about [Gray's] work performance, union activity and rehabilitation, which subsequently caused [Gray] to be hospitalized and to suffer memory loss and stress.

(Deposition of Christine Gray, at 64–69 and Defendant's Exhibit G).

Following the completion of her administrative action, Gray filed this suit against the Defendant for hostile work environment discrimination on the basis of sex and national origin and-retaliation on the basis of her participation in the filing of an EEOC complaint. The Defendant has filed a motion for summary judgment, claiming that there was no discrimination, harassment, or retaliation. Gray has filed a response in opposition to that motion, and, in addition, has filed a motion to strike the motion for summary judgment due to the Defendant's failure to obey an order of this Court that mandated that the parties file a joint stipulation of undisputed material facts prior to the filing of a motion for summary judgment. The parties' contentions are discussed below.

## DISCUSSION

### A. Plaintiff's Motion to Strike

The Plaintiff has filed a motion to strike Defendant's motion for summary judgment due to the Defendant's failure to comply with the portion of this Court's March 9, 2000, scheduling order, which states, **"PARTIES SHALL FILE AN AGREED STATEMENT OF MATERIAL FACTS TWO (2) WEEKS BEFORE A MOTION FOR SUMMARY JUDGMENT IS FILED."** The Defendant has admitted that it did not notice that requirement in the scheduling order, but argues that striking the motion for summary judgment is too extraordinary a sanction. The Plaintiff also requests that the motion be stricken for the Defendant's failure to provide dates for the taking of the depositions of Weaks and Preston.

Plaintiff has not indicated how she was prejudiced from the parties' failure to file an agreed statement of material facts, and this Court believes that without some prejudice, striking the motion for summary judgment would indeed be too extreme a remedy. Furthermore, the record indicates that the depositions of Weaks and Preston have since been taken, so Gray was not subjected to prejudice on that front, either. In the interest of resolving the dispute on the merits and for lack of any demonstrated prejudice, Plaintiff's motion will be denied.

### B. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a show-

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

### B. Sexual Harassment—Subject Matter Jurisdiction

■ The Defendant claims that this Court lacks subject matter jurisdiction over Gray's sexual harassment claim be-

cause Gray has failed to exhaust her administrative remedies with respect to that portion of her complaint. It is well-settled that federal employees making a discrimination claim must first exhaust their available administrative remedies. *See Hall v. U.S. Postal Serv.,* 857 F.2d 1073, 1078 n. 4 (6th Cir.1988). Normally, this Court does not have jurisdiction to consider issues not raised in the plaintiff's EEOC complaint. *See Ang v. Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir.1991).

■ There can be no dispute that discrimination on the basis on sex does not appear on the face of the February 20, 1998, complaint to the EEOC. (Gray Depo., Def.'s Exh. F). Gray argues, however, that her claim falls under a narrow exception to the requirement that an issue must be raised in an EEOC complaint: "Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly filed the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Ang,* 932 F.2d at 544. Gray claims that, since the sexual discussions were mentioned at her administrative hearing, a claim of hostile work environment sexual harassment could reasonably have been expected to grow out of the charge; furthermore, Gray contends that discussion of the sexual conversations at the hearing prevents the Defendant from later claiming that charges based on such activity could not have been anticipated from the original complaint. Both of these arguments are without merit.

The face of the February 20, 1998, EEOC complaint contains eight boxes that may be checked by a claimant alleging discrimination. On her complaint, Gray checked the boxes for "Race," "National Origin," and "Retaliation." She did not check the box for "Sex." Later in the complaint, Gray was directed to "Explain the specific actions or situation that resulted in your allegation(s) as to how you believe you were discriminated against (treated differently from other employees

or applicants) because of race, color, religion, national origin, sex, age, or disability." Gray responded, "Twice in the last 3 months my personal vehicle was vandalized on postal property—1st the word 'Honkey' was scratched in the paint, 2nd the word 'Pollock' was written on the trunk of the car. See attached forms. Retaliation (See Attached)."[3] In her deposition, Gray indicated that the retaliation referred to allegedly occurred due to her earlier application for pre-counseling.

In *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir.1998), the Court of Appeals affirmed summary judgment for the defendant due to a failure to exhaust remedies in a case where the plaintiff had alleged retaliation in her civil suit but failed to check the retaliation box in her EEOC complaint. Such is the case here. Not only did the Gray fail to check the obvious and appropriate box, but in the description of the complaint she did not mention anything that might reasonably lead to an investigation of sexual harassment. The only arguable way that sexual harassment might have arisen would have been through examination of Gray's retaliation claim, and that examination would have revealed that Gray chose not to file a sexual harassment complaint.

■ . Gray's estoppel argument is similarly unavailing. "Equitable estoppel generally is not available against the government." *Housing Authority of Elliott County v. Bergland,* 749 F.2d 1184, 1190 (6th Cir.1984), *quoted in Rhone v. Tisch,* 861 F.2d 721, 1988 WL 115589 (6th Cir. 1988) (unpublished disposition).[4] The Defendant in this case is a government entity. Gray has given the Court no reason to depart from the general rule in this case, and estoppel is therefore unavailable.

**3.** ·Neither party has seen fit to provide the Court with any attachments that might have been attached to the complaint.

**4.** Curiously, *Rhone* was cited by the Plaintiff for the proposition that estoppel should apply. In addition, the Plaintiff failed to indicate that *Rhone* is an unpublished decision and therefore of little precedential value. This failure

This Court is without jurisdiction to hear Gray's sexual harassment claim due to Gray's failure to exhaust her administrative remedies. Summary judgment will be granted for the Defendant on Gray's claim of sexual harassment.

## C. National Origin Harassment

■ Gray, who is of Ukrainian and Polish descent, claims that the inscription of ethnic slurs on her car constitutes harassment on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, which prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case of national origin discrimination by a co-worker in violation of Title VII, the plaintiff must demonstrate the following elements:

> (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon [national origin]; (4) the harassment unreasonably interfered with the plaintiffs work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged [national origin] harassment and failed unreasonably to take prompt and appropriate corrective action.

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829–30 (6th Cir.1999). When the plaintiff has alleged that the harassment was perpetrated by a supervisor, only the first four elements need to be considered. *See*

to note unpublished status (and failure to attach the unpublished decision as an appendix to the brief) also occurred elsewhere in Plaintiff's brief. The Plaintiff is referred to U.S. Court of Appeals for the Sixth Circuit Rule 28(g), governing citation of unpublished opinions.

*Williams v. General Motors Corp.,* 187 F.3d 553, 563 n. 4 (6th Cir.1999).

■ Assuming, *arguendo,* that Gray is able to satisfy the other elements of national origin harassment, she has advanced absolutely no evidence to satisfy the requirement that the harassment interfered with her work performance or created a hostile environment that was severe or pervasive. It is entirely unclear how isolated acts of vandalism, however reprehensible they might otherwise be, perpetrated by a wrongdoer admittedly unknown to Gray and discovered at her residence, interfered with Gray's work environment. Gray has not brought to this Court's attention a single incident in which her national origin led to on-the-job harassment. Mere speculation that the way Gray was treated at work implies that the acts of vandalism were committed by her co-workers or supervisor is insufficient to provide more than the "scintilla of evidence" necessary to prevent summary judgment. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512).

### D. Retaliation

■ Gray alleges that, subsequent to her filing of the August 1997 report, she was subjected to retaliation by Weaks in her capacity of 204B Saturday supervisor. Gray claims that this retaliation is evidenced by Weaks' unpleasant demeanor at a February 6, 1998, meeting with Weaks, Preston, and other members of management, and by Weaks' prohibition of any conversation between Gray and her co-workers while they were on duty.[5] In *Morris v. Oldham County Fiscal Ct.,* 201 F.3d 784 (6th Cir.2000), the Court of Appeals for the Sixth Circuit determined that retaliatory harassment is actionable under Title VII. *See id.* at 791. To establish a prima facie case of Title VII retaliation, a plaintiff must show that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Id.* at 792 (emphasis omitted).

The parties do not dispute Gray's ability to satisfy the first prong of the test, but the Defendant does question her ability to satisfy the others. First, the Defendant claims that, since Gray's pre-complaint request was anonymous, there was no way for any alleged harasser to know that Gray had exercised protected rights. To counter this argument, Gray has submitted the deposition testimony of Weaks. Weaks indicated that, following the September 1997 meeting in which the postmaster discussed Gray's allegations with Weaks and Preston, she suspected that either Gray or another member of the mark-up unit (which numbered less than 20 people) had filed the complaint. Since Weaks acted as the weekly 204B supervisor, this suspicion on her part is sufficient to satisfy the requirement that the Defendant (or the supervisor) knew of the exercise of the protected rights for the purpose of making out a prima facie case that could survive summary judgment.

Gray is unable to satisfy the third prong of the retaliation test with respect to Weaks' actions at the February 6, 1998, management meeting. First, one incident of criticism can hardly be severe or pervasive. Second, Gray has alleged no adverse employment action that arose from that meeting. Determination of whether the

---

**5.** The Defendant argues that the February 1998 meeting is irrelevant since Weaks was acting as an employee at the meeting. However, as some of Weaks' comments were related to Gray's work performance, there is at least the possibility that Weaks was acting as a supervisor during the meeting.

Saturday prohibition on talking was sufficiently severe or pervasive to constitute prima facie retaliation is a more difficult issue; however, it need not be decided, as Gray has failed to show that the prohibition on talking was causally related to her exercise of the protected activity.

Gray filed her request for pre-complaint counseling in August 1997, but Gray's deposition indicates that the talking prohibition did not occur until January 1998, five months later. Furthermore, Gray testified in her deposition that at least two other members of the mark-up unit were also not allowed to speak while working. Neither of these facts lends itself to a determination that the alleged retaliation was causally related to the exercise of the protected activity, and Gray has advanced no other evidence sufficient to make a prima facie showing that such a causal relationship exists. *See Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272 (6th Cir. 1986) (holding adverse action four months after protected activity "insufficient to support an interference [sic] of retaliation.")

None of the incidents of alleged retaliation is able to satisfy all of the elements necessary to make out a prima facie case of retaliation in violation of Title VII. Therefore, summary judgment will be granted for the Defendant on Gray's claim on retaliation.

### CONCLUSION

For the foregoing reasons, the Plaintiff's motion to strike (Doc. No. 27) will be denied, and the Defendant's motion for summary judgment (Doc. No. 23) will be granted.

IT IS SO ORDERED.